UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ERIC MONTANEZ | No. 3:20cr27(MPS) |

**RULING ON POST-SENTENCE MOTIONS**

The Defendant filed a series of motions following the revocation of his term of supervised release and his filing of an appeal. This ruling addresses those motions.

**I.   Background**

The defendant waived indictment and pled guilty to one count of transportation of stolen property in violation of 18 U.S.C. Sec. 2314. In the plea agreement, the parties stipulated that the Defendant had burglarized or attempted to burglarize retail cell phone stores in Connecticut and Massachusetts over 60 times between March and August, 2019. ECF No. 57 at 9-12. The presentence report estimated the total loss from this series of break-ins at approximately $400,000 and the parties stipulated to a Guidelines range of 30 to 37 months. The Court imposed a sentence of 4 months imprisonment, three years of supervised release, and approximately $400,000 in restitution, after taking into account the defendant's "strong pretrial adjustment" (a term of art used by the Court that is further elucidated in the sealed portion of the sentencing transcript; *see also* ECF No. 86) but also imposed a period of two months' home confinement and, as a special condition of supervised release, 100 hours of community service at a rate of 10 hours per month for "some further punishment." ECF No. 79 at 1. As a further special condition of supervised release, the Court ordered that if the defendant could not pay the full amount of restitution in a

lump sum, he was to pay at a rate of at least $250 per month or 10% of his monthly income, whichever was greater. *Id.* at 2.

The defendant began his term of supervised release in April 2021. ECF No. 92 at 2. In September 2022, the Probation Office filed a report of noncompliance noting that although the defendant had been on supervised release for about 18 months, he had provided verification of only 18 hours of community service - an average rate of 1 hour per month - and had not been paying restitution except for a nominal amount in May 2022. ECF No. 89 at 1. The Probation Office noted that the supervising officer "had numerous conversations with Mr. Montanez about the importance of complying with the conditions of his supervised release" and was working with him to help him secure employment. The report recommended that the Court take no action, despite "an extended period of noncompliance related to restitution and community service," because he "appear[ed] to have recently turned a corner and has expressed his intent to focus on satisfying the terms of his supervised release." *Id.* at 2. The Court took no action at the time.

In December 2022, the Probation Office filed a report of violation, charging that the defendant had violated three conditions of supervised release – the two special conditions that he perform 10 hours of community service per month until the full obligation was satisfied and pay restitution in the amount of $250 per month, and the standard condition that he follow the instructions of the Probation Officer related to supervision. ECF No. 92. The report stated that the defendant had still only performed 18 verified hours of community service and had paid only a total of $255 in restitution after 20 months of supervised release. Further, although the Probation Officer had instructed him to fill out a financial statement on multiple occasions, the defendant had not done so and, in addition, was not consistently attending required mental health appointments. ECF No. 92 at 3, 5. Noting the defendant's "willful disregard for the orders of the

2

Court," the Probation Officer recommended that the Court revoke the term of supervised release and sentence the defendant to 2 months of imprisonment followed by a term of supervised release of 24 months. ECF No. 94.[1]

At the January 4, 2023 violation hearing, the defendant admitted that he had violated three conditions of his supervised release: (1) the community service obligation, (2) the restitution obligation, and (3) the requirement that he follow the instructions of the Probation Office. The third violation was based on the defendant's repeated failures to fill out a financial statement provided by the Probation Office. See ECF No. 111 at 7-10. After the Court found that the defendant had violated these conditions, it asked the Probation Officer, defense counsel, the defendant, and the prosecutor to address the appropriate disposition. The supervising probation officer stated that the defendant had been "granted a lot of latitude to get into compliance," that there had been "a breakdown in communication" with the defendant, and that, with regard to the restitution obligation, "it appeared for a very long time to be just an unwillingness to comply as opposed to an inability based on … lack of income." *Id.* at 10-12. Defense counsel stated that he did not disagree and "[didn't] think that Mr. Montanez will disagree" with the probation officer's comments. *Id.* at 12. He added that the defendant had obtained a part time job in June 2022. *Id.* at 12. The prosecutor stated that the defendant had done "virtually nothing with regard to restitution, community service, and employment," and added that the defendant had not even tried to provide a financial statement until the Court scheduled the hearing. *Id.* at 19.[2] The prosecutor did not press for prison time, noting that if the defendant did not demonstrate a more serious

---

[1] Probation's recommendation was, as is customary, filed under seal. Because there is no longer any reason to maintain the document under seal, the Court orders ECF No. 93 unsealed.

[2] Although the defendant apparently provided a financial statement to the probation officer on the day of the revocation hearing – one the probation officer described as incomplete – this document was not furnished to the Court. See ECF No. 111 at 11.

3

commitment towards either employment or community service, she would then advocate for a "harsher repercussion." *Id.* at 20. She also stated that she had come to know the defendant from the underlying case and believed the proceeding was a "wake up call" for him and was "optimistic" that he would do better in the future. *Id.*

The Court stated that it was "not quite in the same position the Government is" and that it was going to revoke the term of supervised release. *Id.* It did so and imposed a period of 2 months' incarceration to be followed by two years of supervised release. The Court stated that it had considered the factors in 18 U.S.C. Sec. 3583 and the breach of trust inherent in the defendant's violations, and found that he had not taken his supervised release obligations seriously and that he had "basically blow[n] off the probation officer." *Id.* at 21. The Court stated that it found a short prison term necessary to reflect the breach of trust and convey to the defendant "an understanding of supervised release, that they are solemn obligations imposed by the court." *Id.* at 22. The statement of reasons filed by the Court states that "after considering all of the factors in 18 U.S.C. Sec. 3583(e), the Court imposed a below Guidelines sentence that included a short but meaningful prison term to reflect the defendant's breach of trust and in consideration of the especially lenient sentence the Court originally imposed." ECF No. 112.[3]

The defendant timely filed a notice of appeal and then filed four motions: (1) a motion for bond pending appeal, ECF No. 106; (2) a motion to continue the self-surrender date to enable the defendant to remain at liberty while the court resolved the other motions, ECF No. 107; (3) a motion to "reconsider or reduc[e] sentence," ECF No. 108; and (4) a motion for indicative ruling

---

[3] As a result of a miscommunication with Court staff, the Probation Office did not file the statement of reasons when the Court prepared it on January 4 - immediately following the sentencing - or even before the defendant filed an appeal or the pending motions. After the Court noticed this omission, it instructed the Probation Office to file the statement of reasons the Court had provided on January 4 and the Probation Office did so on April 4, 2023. *See* Fed. R. Crim. P. 36 ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission.").

under Rule 37 of the Federal Rules of Criminal Procedure, ECF No. 109.  The Court granted the motion to continue the self-surrender date, allowing the defendant until 14 days after the Court ruled on the pending motions to surrender to serve the incarceration portion of his sentence.  The Court now addresses the remaining three motions below.

## II.  Discussion

### A.  *Motion for Bond Pending Appeal*

Under Section 3143(b) of Title 18 of the United States Code, the Court must order a person found guilty of an offense and sentenced to a term of imprisonment detained pending appeal unless the Court finds (a) by clear and convincing evidence that the person is not a flight risk or a danger to the community, and (b) "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" reversal, an order for a new trial, a non-incarceration sentence, or a reduced sentence that is less than the time served plus the expected duration of the appeal process.  A "substantial question is one of more substance than would be necessary to a finding that it was not frivolous.  It is a close question or one that very well could be decided the other way."  *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985).  "[T]he burden of persuasion rests on the defendant." *Id.*  Here, I find that based on the little the defendant has said about his expected arguments on appeal, he has failed to raise the requisite "substantial question of law or fact" likely to result in one of the forms of relief listed in the statute.  I therefore deny the motion and do not address the other requirements of Section 3143(b).

The defendant identifies two arguments he expects to raise on appeal: (1) that his counsel at the revocation hearing was ineffective, and (2) that his violations were not willful.  ECF No. 106-1.  I discuss both below.

*1. Ineffective Assistance of Counsel*

Defense counsel was ineffective, the defendant argues, because counsel failed to anticipate that the Court would revoke the term of supervision and incarcerate the defendant for his violations, and, due to this failure, "failed to present evidence that negated the wilfulness of [the defendant's violations]." *Id.* at 4. The defendant adds that "[h]e began the hearing with no warning that he would be expected to enter a plea and he pleaded guilty, to use a cliché, on the fly," and that, had he anticipated this possibility, he would have been prepared with documents from his employer and his community service site supporting his "excuses." *Id.* at 4-5.

The Court does not find that the ineffective assistance of counsel argument raises "a substantial question of law or fact" for several reasons. First, the premise of the argument as articulated in the defendant's motion does not appear to be that defense counsel's performance at the revocation hearing fell below the standard of "reasonable competen[ce]," *Harrington v. Richter*, 562 U.S. 86, 110 (2011), used in assessing such claims. Indeed, the defendant asserts that his lawyer's miscalculation about the likely course of the revocation hearing is "understandable," that his appellate counsel "would have expected" the same, and that the government and the probation officer probably would have as well, ECF No. 106-1 at 4; he later asserts that "it seems clear that prior counsel with some justification believed that because the appearance before the Court for the supervised release hearing would be [the defendant's] first, the case would probably be continued and that he did not need to prepare [the defendant] to enter a guilty plea or prepare for sentencing, nor did he need to collect those documents that might have demonstrated a lack of wilfulness." *Id.* at 8. These comments do not suggest that defense counsel's performance was substandard.

Instead, the defendant appears to be making less an ineffective assistance argument than an argument asserting lack of reasonable notice. That argument lacks merit on this record. As noted, in September 2022, the probation officer filed an initial report with the Court raising some of the issues that ultimately became part of the December violation report but asked the Court to delay taking action so that the officer could continue working with the defendant to enable him to satisfy the conditions of supervised release. That filing also noted, with respect to the restitution obligation, that if the defendant failed to cooperate in making payments as he had agreed, a modification might be requested and "additional action beyond that may be sought." ECF No. 89. The violation report itself was filed December 7, 2022, and the Court granted an extension of the hearing until January 4, 2023, to accommodate defense counsel's schedule. ECF Nos. 95, 96.

At the January 4 hearing, the Court asked defense counsel whether his client was prepared to admit the violations. After conferring with the defendant, defense counsel stated that he was. ECF No. 111 at 3-4. During the Court's canvass of the defendant, the defendant stated that he had read the violation report and discussed it with defense counsel, and defense counsel confirmed that he had gone over the matter with his client in adequate detail. Further, the defendant stated that he understood the allegations in the report and the evidence on which they were based, that he was satisfied with his lawyer, that he understood the penalties the Court could impose upon a finding of violation, that he understood his right to have an evidentiary hearing to contest the violations or to present evidence, and that he understood each of the three charges of violation against him. *Id.* at 4-10. At no time during the hearing did either the defendant – who spoke at the hearing during the sentencing portion (*id.* at 18) – or his counsel suggest that they did not expect that the hearing would entail a finding of revocation or a sentencing, that they needed more time to prepare, or that there were documents they could have obtained had they better understood what to expect. And

7

while it is true that the Court does not always, in a case such as this one in which the defendant is not in custody, proceed at the first hearing after the filing of a report of violation to a determination of whether to revoke the term of supervised release, the defendant does not cite, and the Court is unaware of, any authority prohibiting it from doing so.  "During a hearing for violations of supervised release, a Defendant is entitled to written notice of the violation; disclosure of the evidence against him; an opportunity to appear, present evidence and question any adverse witness; and an opportunity to make a statement and present any information in mitigation." *United States v. Marte-Estrella*, 2017 WL 6000589 *3 (S.D.N.Y. Dec. 1, 2017)(citing Fed. R. Crim. P. 32.1(b)(2)).  The defendant received all of this, *see* ECF No. 111 at 4-10, and neither he nor his counsel suggested that there was insufficient notice or that they were unfairly surprised.  Further, the filing of the September 2022 report placed the defendant and his counsel on formal notice of the importance of the defendant's compliance with his conditions and that, if there was further non-compliance, "additional action . . . may be sought."  ECF No. 89.  Under these circumstances, I find that any notion that the defendant and his counsel were not provided reasonable notice of the potential consequences at the hearing does not present "a close question or one that very well could be decided the other way."

And to the extent that the defendant does intend on appeal to present an ineffective assistance of counsel argument, I do not find that argument to raise a "substantial question" on this record either.  At its core, this argument faults defense counsel for failing to submit documents to the Court at or before the hearing that would have either negated the defendant's "willfulness" or mitigated the sentence.  The documents at issue are, according to the defendant, "affidavits or similar documents" from the community service site, his employer, and his landlord; the landlord, according to the defendant's motion, could have corroborated the statements he now makes in his

post-sentence motions about being in difficult financial straits. ECF No. 106-1 at 4-6. But the defendant has not filed with his post-sentence motions any affidavits or similar documents of the type he faults prior counsel for failing to obtain, and, other than the representations in the motion, there is nothing in the record to suggest that prior counsel could reasonably have obtained such affidavits. The defendant was present at the revocation hearing and could have presented facts concerning his difficult economic straits and any other mitigating circumstances, but he did not do so. Had he done so, the Court could have asked follow-up questions and assessed his credibility. Further, the Court could have asked defense counsel if he had attempted to obtain supporting documents.

Now, however, the Court is left to rely on appellate counsel's representations, which appear to be based on appellate counsel's post-sentence discussions with the defendant. And the transcript of the revocation hearing suggests there is reason to question the defendant's post-sentence representations on these subjects. For example, although the defendant now contends that he and his family were "facing eviction" and "needed every dollar they had in order to persuade their landlord not to throw them out onto the streets," ECF No. 106-1 at 6, neither he nor his lawyer mentioned this at the hearing and, in fact, defense counsel confirmed at the hearing that the defendant had not worked for the first 14 months of his supervised release term and had only obtained part-time employment six months before the hearing.[4] The Court stated at the hearing that, to its understanding, the labor market had been favorable – even for those with felony convictions – during the defendant's period of unemployment, ECF No. 111 at 14-15, and defense counsel did not contest this point, suggesting instead that the reason the defendant had chosen not

---

[4] In his motion for bond, the defendant contends that he was "hired on December 27, 2022" for a part-time job at Whole Foods and that "on February 27, 2022," he was "promoted" by Whole Foods and was then working full-time. ECF No. 106-1 at 5. It is not clear how these dates square with each other or with the information provided by defense counsel at the hearing.

to work was that he had "taken on a lot of child care responsibility" for his fifteen-year-old daughter. *Id.* at 15; *see also* ECF No. 106-1 at 5. But neither defense counsel nor the defendant provided details about this or offered any explanation as to how the defendant's child-care obligation had changed to permit him to take on part-time work in June 2022 or as to whether other household income was sufficient to make ends meet. Further, with regard to the defendant's community service obligation, defense counsel stated that the defendant "thinks he has an additional 38 or 42 hours that have not been provided to Probation;" he added that the defendant had called the community service site in defense counsel's presence and that the site "documentation" coordinator "didn't deny or say 'I've never … seen you before.'" ECF No. 111 at 16. These comments are too vague to suggest that the community service site would have been willing to provide an affidavit verifying that the defendant had worked additional hours had it been asked, and, in any event, even another 38 or 42 hours would not – 21 months into the term of supervised release – have brought the defendant into compliance with his 100-hour obligation. Finally, with regard to the defendant's failure to cooperate with the Probation Office, the defendant's Probation Officer commented at the hearing that although she had "long" been attempting to obtain financial information from the defendant, he had provided her with no such information until "just today" in the moments before the hearing and even that information was incomplete. ECF No. 111 at 11; *see* note 2, *supra*. She added that the defendant had repeatedly assured her that "I'll send the payments" and "I'll do the community service," and added that that "only more recently [he] said, 'I can't make those payments,'" a statement she was unable to verify because of his failure to provide the requested financial information. *Id.* She said she had reminded him about his community service obligation "multiple times," and that "for somebody who is only working part time" (not to mention not working at all for 14 months), she could not

10

understand "what the holdup with that is." *Id.* at 12. Neither the defendant nor his counsel contested these statements.

None of this suggests that the defendant was making good-faith efforts to comply but that, due to an error by counsel, the Court was not made aware of those efforts. To the contrary, in his final comment to the Court, the defendant himself suggested that the real problem was, as the Court ultimately concluded, that he had not taken his supervision obligations seriously: "The circumstance here has definitely been brought to my attention that I have to really take this serious." *Id.* at 18. In short, the record suggests that no affidavits or similar documents were provided to the Court to demonstrate that the defendant was making good-faith efforts to comply with his obligations not due to any failures by counsel but because the defendant was not, in fact, making such good-faith efforts. For these reasons, I cannot find that the claim of ineffective assistance raises a "substantial question of law or fact."

2. *Willfulness*

The defendant argues that "willfulness is an element of the violation," that the charging document "fails sufficiently to allege willfulness," and that "the plea colloquy does not contain an admission of willfulness." ECF No. 106-1 at 7. "[I]t is unconstitutional to imprison a probationer for failure to pay a fine or restitution, unless the sentencing court determines that the failure to pay was willful or that there are not 'adequate alternative methods' of punishing the defendant." *United States v. Green*, 81 Fed. Appx. 364, 366 (2d Cir. 2003)(quoting *Bearden v. Georgia*, 461 U.S. 660 (1983)). But the Second Circuit "ha[s] never held that revocation other than one based upon an indigent's failure to pay restitution must be premised on willful conduct." *Id.*; *see also Bearden*, 461 U.S. 660, 668 n. 9 ("We do not suggest that, in [contexts other than fines and restitution], the probationer's lack of fault in violating a term of probation would necessarily

11

prevent a court from revoking probation."). Here, of course, the revocation was based on the defendant's violation of two other conditions in addition to his violation of the restitution condition, and so the "willfulness" argument is not one that would warrant reversal even if it was supported by the record, which, as discussed below, it is not. Further, even as to the restitution obligation, willfulness is not "an element of the violation;" rather, a finding that the defendant's failure to pay was "willful" or that there are not "adequate alternative methods" for sanctioning the defendant's conduct is a precondition on the court's imposition of a prison sentence. *Bearden*, 461 U.S. at 668 ("If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified *in using imprisonment as a sanction* to enforce collection" and noting that, even for indigent probationers, "[t]he State clearly has an interest in punishment and deterrence, but this interest can often be served fully by alternative means," such as extending the time for payment, reducing the fine or "direct[ing] that the probationer perform some form of labor or public service in lieu of the fine." (emphasis added)). The absence of a specific mention of willfulness in the charging document would thus not preclude a finding of violation.

In any event, the record belies the defendant's "willfulness" argument. While the Court did not use the word "willful" in imposing sentence, it described the defendant's conduct in terms substantially equivalent to a willfulness finding:

> I just do not think this record … is consistent with taking your obligation seriously. It's not. It's far from it…. [T]here's just no evidence that you made a serious effort to comply. There's none. If there were, we wouldn't be having this conversation.
> [If] [t]his was a situation where, you know, working part time and, you know, you're taking care of the kid or whatever and you're making payments but they're smaller, that's a different ball game. That's not this. That is not this, Mr. Montanez. This is basically blowing off the probation officer and your community service hours….

> So, you know, again, if it was one of those things, again, I wouldn't be talking to you like this. But it's not. It's a pattern of noncompliance of, frankly, treating this like, oh, yeah, I'll get to it. You know, well, probation officer's on the phone again….
>
> [I]t's clear that you need to have an understanding of supervised release, that they are solemn obligations imposed by the Court….
>
> When you get out [of prison,] if [defense counsel] files a motion explaining the circumstances saying, "Judge, he needs a modification," that's fine. I grant those commonly. But, again, that's not this situation. This situation is, frankly, flagrant; and I'm not going to tolerate it.

ECF No. 111 at 21-23. And there was ample evidence to support a willfulness finding with respect to the defendant's violation of the restitution obligation. The defendant made a single nominal payment during the first 14 months of supervised release and, then, after he became employed part-time in June 2022, made a payment of $200 in August and a payment of $50 in September 2022. He made no other payments, despite agreeing with the probation officer in September 2022, after he was employed, that he would pay $275 per month. ECF No. 89 at 2. Indeed, he failed even to try a second time after being instructed to do so by the probation officer when an initial attempt to pay $50 in November did not clear. ECF No. 111 at 8. In all, he paid $255 in restitution during 21 months of supervised release, *id.*, leaving an unpaid balance of $400,322.30.

Neither the defendant nor his counsel suggested at the hearing that his failure to pay restitution stemmed from indigence, and the Probation Officer noted at the hearing that she had reached the opposite conclusion: "it appeared for a very long time to be just an unwillingness to comply as opposed to an inability based on … lack of income," and only "recently" had the defendant told her he was unable to make the required payments. *Id.* at 12. She similarly noted in her recommendation that "Whereas previously, Mr. Montanez'[s] nonpayment was attributable to his lack of employment, it now appears that he is willfully disregarding the Court's orders." ECF No. 94 at 1. These comments were warranted not only by the defendant's continuing pattern of nonpayment even after he became employed but also by his refusal to provide financial

13

statements or other information demonstrating an inability to pay. *See United States v. Germosen*, 139 F.3d 120, 131 (2d Cir. 1998)(defendant bears burden of proving inability to pay restitution). The Court concludes that the defendant's argument concerning willfulness does not raise a "substantial question of law or fact."[5]

### B. *Motion to Reconsider or Reduce Sentence and Motion for Indicative Ruling*

The Defendant cites no authority to support his motion asking the Court to reconsider or reduce his sentence and acknowledges that he is "uncertain as to the provision of the Federal Rules of Criminal Procedure that would authorize such a reduction." ECF No. 108-1 at 8. He nonetheless suggests "that the case presents certain extraordinary features that would justify a reduction of sentence pursuant to the provisions governing compassionate release." *Id.* Perhaps recognizing that the pendency of an appeal might foreclose even the compassionate release route, the defendant also filed a motion for an indicative ruling under Fed. R. Crim. P. 37.

The pendency of an appeal bars this Court from reconsidering or reducing the defendant's sentence. A notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). "Although the filing of a notice of appeal 'does not preclude a district court … from correcting clerical errors,' it prevents a district court from issuing 'substantive modifications of judgments.'" *United States v. Sanchez*, 2022 WL 4181790 *1 (S.D.N.Y. Sept. 13, 2022)(quoting *United States v. Ransom*, 866 F.2d 574, 575-76 (2d Cir.

---

[5] Although not required, there was also ample evidence of willfulness with respect to the defendant's other violations. With regard to the community service obligation, the Probation Officer observed that she had no explanation for the defendant's failure to perform more than 18 hours of community service in 21 months given the fact that he was only working part-time, *id.*, and neither the defendant nor his counsel provided any explanation as to why he had not performed more community service hours during the fourteen months he was unemployed. With regard to the defendant's failure to provide financial statements, the defendant refused to provide one even though he had been sent the form multiple times and even been provided a hard copy. ECF No. 111 at 9; *see also id.* at 18 (court noting that "you're just blowing off Probation when they're asking for a financial statement. It's not the hardest thing in the world to do.").

1989)).  Several district courts within the Second Circuit have thus concluded, and this Court agrees, that "a district court lacks jurisdiction to consider a defendant's compassionate release motion while a defendant's direct appeal remains pending." *Sanchez*, 2022 WL 4181790, at *1 (citing cases).

"Federal Rule of Criminal Procedure 37," which the defendant invokes in his motion for indicative ruling, "anticipates this jurisdictional issue." *Id.*  It provides as follows: "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37.

If not for the pending appeal, this Court would deny his motion to reconsider or reduce sentence, even if it was brought as a motion for compassionate release under 18 U.S.C. Sec. 3582(c)(1).[6]  Section 3582(c)(1) allows a court to reduce a term of imprisonment "after considering the factors set forth in section 3553(a)" if it finds that "extraordinary and compelling reasons warrant such a reduction."  It is unclear whether the defendant, who is not currently incarcerated due to the Court's extending his surrender date, may invoke a statute that appears intended to provide relief to persons who are incarcerated.  *See* Section 3582(c)(1)(A)(requiring defendant to exhaust administrative remedies with Bureau of Prisons before making compassionate release motion).  Nonetheless, assuming without deciding that the defendant may invoke the statute because he is facing a prison sentence,  the Court does not find that extraordinary and compelling reasons warrant the requested reduction and finds that the Section 3553(a) factors weight against

---

[6] Even if an appeal were not pending, the Court is unaware of any other authority it would have in this situation to "reconsider or reduce" its sentence.  District courts have extremely limited authority to modify a sentence once it is imposed, *United States v. Martin*, 974 F.3d 124, 136 (2d Cir. 2020), and none of the other narrow exceptions to that general rule appear to apply here, and the defendant has not invoked any of them.

15

a reduction. Much of the reasoning for this conclusion has been set forth above in the Court's ruling on the defendant's motion for bond pending appeal, and the Court will not repeat that discussion here. The defendant's motion to reconsider or reduce sentence adds a new assertion that if the Court denies a reduction, the defendant "will lose his job at the Whole Foods warehouse, his family will be plunged into the financial turmoil in which they existed previously, and the likelihood of any immediate restitution upon his release will be diminished." ECF No. 108-1 at 8. But the record does not support the notion that the defendant's "family will be plunged into financial turmoil" by a two-month prison sentence. There was no mention of this at the revocation hearing and even now, the defendant offers no details on this point and fails to explain how this assertion squares with the fact that his family apparently managed during the fourteen months during which he was unemployed and the four-month period before that during which he was incarcerated. In addition, even if the defendant's incarceration for two months will impose a financial hardship on his family, this is hardly "extraordinary." It is, instead, a common but unfortunate feature of many prison sentences, one for which the defendant himself is usually to blame. And the Section 3553(a) factors counsel against granting the motion largely for the reasons stated above in the ruling on the motion for bond. In short, for those reasons, the relatively short sentence the Court imposed – half of the bottom end of the Guidelines range, ECF No. 111 at 6 – is fair and reasonable in light of the defendant's history and characteristics and sufficient but no greater than necessary to serve the purposes of sentencing that apply to a revocation of supervised release. *See* 18 U.S.C. Sec. 3583(e).

## III.　Conclusion

For these reasons, the defendant's post-sentence motions (ECF Nos. 106, 108, 109) are denied.

IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　Michael P. Shea, U.S.D.J.

Dated:　Hartford, Connecticut
　　　　　April 11, 2023